SEXTON, Judge.
Tommy Ray Johnson appeals the trial court judgment forfeiting approximately $15,000 in cash seized at the Johnson house and the balances in two savings accounts on which his name appears.
Undercover officers working with the Lincoln Parish Narcotics Task Force made several purchases of marijuana from Tommy Ray Johnson at his residence. A search warrant was issued for the Johnson residence based upon allegations of these sales. During the search, a small amount of marijuana, some drug paraphernalia, approximately $15,000 cash and various financial records were seized.
Among the financial records were income tax returns for several years, all of which indicated that Tommy Ray Johnson was unemployed and that the sole income of the family was approximately $14,000 per year earned by Dorothy Johnson. Also among the financial records were statements and deposit receipts indicating the existence of nine savings accounts at various banks in North Louisiana. Seven of these savings accounts carried the name of Tommy Ray Johnson and one of his sisters or his wife. The eighth account was in the name of Dorothy Johnson and one of the sisters. The ninth account was in the name of Dorothy Johnson only.
Pursuant to LSA-R.S. 15:1351 et seq., the state instituted two separate civil suits for the forfeiture of the nine savings accounts and also for the $15,000 cash and the other property. Those suits were consolidated for trial. Two of the sisters, Toy-lean and Bonestine, whose addresses were in Homer, Louisiana, were found to have moved to Houston, Texas; as a result, they were not served.
On July 31,1987, the state obtained judgment against the other seven accounts. *1099 This court affirmed the trial court judgment as to the seven accounts on May 4, 1988. State v. Nine (9) Savings Accounts, 528 So.2d 676 (La.App.2d Cir.1988).[1]
The matter as to the remaining two accounts, the cash and the other property, was tried in November and December of 1987. The trial court found that the “other property” that was seized at the residence was not subject to forfeiture because the state did not introduce any evidence regarding this property. The trial court ordered the forfeiture of the balances in the two savings accounts and the $15,000 cash that was seized from Tommy Ray Johnson’s residence.
In ruling on this case, the trial court took note of State v. Spooner, 520 So.2d 336 (La.1988), in which the Louisiana Supreme Court declared unconstitutional the presumption contained in LSA-R.S. 32:1550(A)(7)(c) that money seized in close proximity to controlled dangerous substances was contraband.[2] However, the trial court noted that the seizure in the instant case was under the Louisiana Drug Racketeering Act, LSA-R.S. 15:1351 et seq. The court further noted that LSA-R.S. 15:1356(A)(2) provided that “no ownership interest in indivisión shall be affected by a forfeiture hereunder if the ... owner in indivisión establishes that he is a factually innocent person.” The court observed as an aside that “requiring the owner to prove that he is ‘factually innocent’ is unconstitutional under Spooner. ” However, the court pointed out that the state conceded Spooner’s applicability and did not rely on this section. Thus, the trial court determined that the state had proven by a preponderance of the evidence that the funds in the accounts were derived from drug racketeering activity and thus ordered the forfeiture of the two savings accounts at issue and the cash.
Only Tommy Johnson appealed the judgment of the trial court. In his brief, the defendant argues that the trial court was in error in ordering the forfeiture of the funds in the two savings accounts. The defendant does not complain about the trial court judgment regarding the $15,000 cash; therefore, we do not consider that aspect of the judgment.
The first issue that the defendant asks this court to consider is “[wjhether R.S. 32:1550(A)(7)(c) unconstitutionally shifts the burden of proof to the defendant.” There are several problems with the defendant’s argument. Implicit in the defendant’s argument is that LSA-R.S. 32:1550(A)(7)(c) is the relevant statute in this case. It is not. This forfeiture proceeding was brought under LSA-R.S. 15:1351 et seq., the Louisiana Drug Racketeering Act. The trial court did indeed observe that a portion of that act was probably affected by the Spooner rationale, i.e., LSA-R.S. 15:1356(A)(2), which provides as follows:
All forfeitures or dispositions under this Section shall be made with due provisions for the rights of factually innocent persons. No mortgage, lien, privilege, or other security interest recognized under the laws of Louisiana and no ownership interest in indivisión shall be affected by a forfeiture hereunder if the owner of such mortgage, lien, privilege, or other security interest, or owner in indivisión establishes that he is a factually innocent person. No forfeiture or disposition under this Section shall affect the rights of factually innocent persons.
Of course, the trial court opinion in this regard operates to the appellant’s benefit. However, as we previously noted, the trial court found that the state did not wait for “the owners to prove their factual innocence.” Thus, the court determined that the presumption was not applicable. In these determinations, the trial court was obviously referring both to this appellant and the other instant respondents who were apparent owners in indivisión with appellant.
*1100 In considering this issue on appeal, it is important to note that LSA-R.S. 15:1356(A)(2) is obviously not intended to pertain to those situated as Tommy Ray Johnson—one who has obtained funds or property through the illicit sale of controlled dangerous substances. The purpose of the Louisiana Drug Racketeering Act is to provide for the civil forfeiture of the proceeds of, or property derived from the proceeds of, illicit drug activity. LSA-R.S. 15:1353. Thus, LSA-R.S. 15:1356(A)(2) is designed to protect “factually innocent persons” who may be owners in indivisión of the property seized or have a security interest therein—which might include Bonestine and Toylean Johnson. However, these two parties have not appealed.
Because LSA-R.S. 15:1356(A)(2) does not apply to this appellant, the issue of the constitutionality of the statute is not before us.[3] This point is important because the Louisiana Supreme Court has exclusive appellate jurisdiction over cases in which a law of this state has been declared unconstitutional by the trial court. LSA-La. Const. Art. 5, § 5(D) (1974); Bradford v. Department of Hospitals, 255 La. 888, 233 So.2d 553 (1970); Gilbert v. Catahoula Parish Police Jury, 404 So.2d 291 (La.App. 3d Cir.1981).
We hold that LSA-R.S. 15:1356(A)(1) does apply to Tommy Ray Johnson. That statute provides in pertinent part:
All property, immovable or movable, including money, used in the course of, intended for use in the course of, derived from, or realized through, conduct in violation of a provision of R.S. 15:1353 is subject to civil forfeiture to the state.
Unlike subsection (A)(2), subsection (A)(1) does not provide for a burden of proof. Although Spooner involved another forfeiture statute, LSA-R.S. 32:1550, the reasoning in that case on the burden of proof issue offers valuable guidance in all civil forfeiture cases. While the Supreme Court placed the burden of proof in that case on the state, the court declined to decide what that burden was. As the Supreme Court noted in footnote ten of its opinion, the resolution of the issue of what burden of proof applied was not necessary because the court found that the state had failed to carry its burden of proof under any standard.
The court also noted that its members were divided on the issue of what the standard of proof should be. Justice Calogero, the author of Spooner, stated that he believed that the state should be required to prove the grounds of a forfeiture beyond a reasonable doubt. The Chief Justice and Justice Dennis joined in the opinion and presumably agree. Justice Cole concurred in the result and expressed the opinion that the standard should be by a preponderance of the evidence. Justices Marcus and Watson both agreed with this view. Justice Lemmon concurred without reasons. Thus, three justices favor proof beyond a reasonable doubt and three favor proof by a preponderance of the evidence. One justice’s view is unrecorded.
We agree with the trial court that the standard should be a preponderance of the evidence. We adopt the view of our brother below that
Justice Cole’s well reasoned concurrence is the only thorough discussion of the problem, and is thus the only real guidance this court has. Accordingly, this court chooses to follow the careful analysis set out in Justice Cole’s concurrence, holding that the standard of proof in a forfeiture proceeding under R.S. 15:1356 is that of proof by a preponderance of the evidence. This decision is reinforced by the fact that Sections 1351 et seq. provide both "criminal” and “civil” remedies, and designate them as such. Clearly, the legislature intended that forfeiture under Section 1356 be treated as a civil proceeding.
*1101 We now turn to the defendant’s second argument, that the state did not carry its burden of establishing that the funds in the two savings accounts in question were derived from the Sale of drugs.
The state first had to establish that Tommy Ray Johnson was engaged in a pattern of drug racketeering activity as defined by LSA-R.S. 15:1352. The record reveals that for about five years the Lincoln Parish Narcotics Task Force and other law enforcement agencies had been investigating Tommy Ray Johnson for drug-related activities. The investigation culminated during the first half of 1987. Between January and June of 1987, the undercover agents made five purchases of controlled dangerous substances from Tommy Ray Johnson at his residence. A search warrant was issued for the Johnson residence, and the search was executed on June 3, 1987, the day after the last drug buy by an undercover officer. The officers found marijuana in a garbage bag in the kitchen. Also, the officers found $300 in marked money that had been used to make the last drug purchase. As stated by the trial court, the state has clearly shown that Tommy Ray Johnson has engaged in a pattern of drug racketeering activity.
Next, the state must establish that the money in the two accounts was “used in the course of, intended for use in the course of, derived from, or realized through, conduct in violation of á provision of R.S. 15:1353.” LSA-R.S. 15:1356(A)(1). In the course of conducting their search, the police found financial records indicating the existence of nine savings accounts at various banks in Lincoln, Bienville, Claiborne and Webster Parishes. Seven of the accounts carried the name of Thomas Ray Johnson and his wife or one of his sisters. The eighth account was in the name of Dorothy Johnson and one of the sisters. The ninth account was in the name of Dorothy Johnson only. Seven of the accounts were ordered forfeited on July 31, 1987. Only the following two accounts are at issue on this appeal: account number 2076004 in the names of Toylean or Thomas Johnson at First National Bank of Arcadia, Louisiana; and account number 2166887 in the names of Bonestine or Thomas R. Johnson at Minden Bank & Trust Company. On December 31, 1986, the date of the most recent statements in the record, Toylean’s and Bonestine’s accounts contained $6,126.70 and $8,790.33, respectively.
As noted by the trial court, Toylean and Bonestine testified at great length regarding their “legitimate sources of income.” Toylean testified that with the exception of the initial deposit of $200 to open the account, her brother made all the deposits to the Arcadia account.
Toylean testified that the deposits made by her brother were of sums of money which she gave to him to deposit for her. She asserted that he made the following deposits: $470.50 from an employer’s stock settlement; $1,000 from savings bonds; $800 from the sale of stock; $1,250 from an employee trust investment plan; and $2,500 from an income tax refund.[4] There is evidence in the record to support the assertion that she received the money from these sources, but there is no evidence that the sums were given to Tommy Ray Johnson or that they were deposited in the account. The only bank statement pertaining to this account, the 1986 statement, does not list any deposits in these amounts.
Bonestine asserted that she and her sister, Glenda, made all but one of the deposits to the Minden account, and that Tommy Ray made one deposit to the account on Bonestine’s behalf. Bonestine testified that she gave her brother $1,500-$1,600, most of which was derived from an insurance settlement, to deposit in the Minden account. She further testified that she deposited lottery winnings of $5,000 in the account in 1984. As in the case of Toyle-an’s account, the statements introduced into evidence do not show a deposit made in this amount.
*1102 The trial court did not find the testimony of the two sisters to be credible:
Bonestine and Toylean further explained that they always sent defendant cash to deposit instead of the original check. When questioned by the court as to why they kept their savings accounts in Louisiana although they lived in Houston and as to why they always sent cash to deposit, both Bonestine and Toylean vaguely answered that this was just the way they chose to do it. ...
In short, their testimony is a mass of contradictions, unsupported assertions, and convenient, if unbelievable, explanations. In view of this, the court does not hesitate to disregard their testimony. Clearly, the two sisters were attempting to “cover up” for their brother’s illegal activities and to further his scheme to disguise his drug racketeering profits.
The totality of the evidence leads to the conclusion that the accounts contained funds derived from drug racketeering activity. Tommy Ray Johnson had seven savings accounts in several different banks in a four-parish area. Another account was in the name of his wife alone, and the last account was in the name of his wife and one of his sisters. As noted by the trial court,
it is a common tactic for drug racketeers to scatter their funds among several banks in different names. Further, arranging for the appearance of part ownership by a “factually innocent person” by listing another person on the account would provide a convenient method for avoiding forfeiture under the statute.
In addition, the police found a large sum of money, $15,597, in Tommy Ray Johnson’s home. Marked money used to make the last undercover drug buy was included. As noted by the trial court, it is “highly unusual” for a person to have this large amount of cash in his house. The cash could not be traced to legitimate sources. The joint tax returns for the couple for the past three years showed that Dorothy Johnson was the only wage earner in the family and that her income ranged between $12,000 to $14,000 per year. Despite the fact that Tommy Ray Johnson was listed as unemployed on the joint tax return, his wife testified at trial that he earned money from an automobile repair shop that was located behind his house. Dorothy Johnson further testified that her husband paid all the household expenses with the money that he earned from this repair business with the exception of the mortgage, which she paid. Regarding Mrs. Johnson’s testimony about the repair shop, the trial court wrote:
The court notes that all payments made to defendant were made in cash. It is common for those who earn money •from illegal activities to have “cover” through which they can launder money. This shop business has all the earmarks of such a cover: small untraceable amounts received for nondescript repair work; no set inventory or business hours; no financial records; no customer receipts; and all business done in cash. Defendant has no occupational licenses, pays no sales tax, and does not file income tax returns. Quite simply, the evidence indicates that the volume of work done by defendant in his shop is relatively small, certainly not enough to enable him to pay all the family expenses. Thus, Mrs. Johnson’s testimony that the $15,000 cash and all family expenses are either paid from her salary or earned from the shop is simply not credible. Her salary and the income from the shop do not add up to enough to account for $15,000 cash left lying around the house.
Considering the evidence which we have discussed and the trial court’s credibility determinations which are not clearly wrong on this record, we conclude that the state has carried its burden of proving by a preponderance of the evidence that the funds in account number 2076004 at First National Bank in Arcadia and account number 2166887 at Minden Bank & Trust Company were derived from drug racketeering. We affirm the trial court’s forfeiture of these accounts. The costs of this appeal are assessed to appellant.
AFFIRMED.

. The state notes in brief that an application for certiorari regarding that case is now pending before the Louisiana Supreme Court.

. The statute declared that the presumption was rebuttable by clear and convincing evidence.

. Moreover, it is less than clear that the trial court specifically found the subsection of LSA-R.S. 15:1356 unconstitutional. If so, that determination was probably dicta. Additionally, the section was not declared unconstitutional in the trial court judgment. But see Tafaro’s Investment Co. v. Division of Housing Improvement, 261 La. 183, 259 So.2d 57 (1972).

. The trial judge found that the refund was a 1986 refund; however, Toylean testified that she received the refund in 1987. The copy of the refund check (Exhibit D-4) is undated.