SEXTON, Judge.
This case is before us on remand from the Louisiana Supreme Court after it granted writs herein on October 28, 1988. 532 So.2d 164.
This case originated when the State of Louisiana attempted to seize nine savings accounts. However, the state initially only proceeded to judgment on seven of those accounts because two of the persons listed, Toylean and Bonestine Johnson, were not served. The judgment against the seven accounts was appealed in No. 19,618-CA. We affirmed. State v. Nine (9) Savings Accounts, 528 So.2d 676 (La.App. 2d Cir. 1988).
The seven accounts which were the subject of the first appeal (No. 19,618-CA) were: (a) four accounts containing the name of Tommy Johnson or his wife, Dorothy, and the name of yet another person; (b) two accounts in the name of Tommy and Dorothy Johnson; and (c) one in the name of Dorothy Johnson only.
The remaining two accounts were in the names of Tommy and Toylean or Tommy and Bonestine Johnson. Toylean and Bo-nestine were subsequently served and a later trial date was set. That judgment was appealed in No. 20,076, the second appeal. We also affirmed. State v. Nine (9) Savings Accounts, 535 So.2d 1097 (La.App. 2d Cir.1988).
A brief synopsis of the two cases is perhaps helpful.
No. 19,618 dealt with seven accounts. Five were listed in the name of the criminal defendant, Tommy Ray Johnson, and another person (other than Toylean or Bones-tine Johnson). One was in the names of Glenda Johnson and Dorothy Johnson, and one was in the name of Dorothy Johnson only. The chronology is as follows:
31 July 1987 — Trial court judgment
18/29 September 1987 — Orders of appeal
4 May 1988 — Opinion, Court of Appeal
9 May 1988 — Writ to Supreme Court
*1056 28 October 1988 — Supreme Court order to consolidate (presenting the instant problem)
In this appeal, appellants[1] contended (a) that the presumption in LSA-R.S. 32:1550(A)(7)(c) was unconstitutional, citing State v. Spooner, 520 So.2d 336 (La.1988),[2] and (b) that the state’s evidence was insufficient to support the forfeiture of the seven accounts.
This court held: (1) that the Spooner rationale was not applicable because the instant forfeiture was under the provisions of Title 15 and therefore not affected by Spooner, and (2) that the lack of a transcript made it “impossible” to determine what evidence was adduced and rejected the insufficient evidence claim.
No. 20,076 dealt with the other two accounts and the only appellant was the criminal defendant, Tommy Ray Johnson. Toy-lean and Bonestine Johnson did not appeal. The chronology is as follows:
10 March 1988 — Trial court judgment
21 March 1988 — Order of appeal
26 October 1988 — Opinion, Court of Appeal
17 November 1988 — Writs to Supreme Court (inquiry indicates writ still pending)
The trial court held that the Title 32 provision which Spooner declared unconstitutional made part of Title 15 unconstitutional as well; nevertheless, the trial court found that the state had carried its burden of proof. In appealing this ruling to us, appellant argued that the Spooner rationale applied in this case as well (but the argument was couched in Title 32 terms) and that the evidence was insufficient to support the seizure.
This court held that the case involved a Title 15 issue, not a Title 32 issue, and that the two titles were separate. We noted that while some language in Title 15 is similar to that in Title 32, the troublesome language in Title 15 only applies to “co-owners” and “lienholders,” none of whom were involved in the appeal as Tommy Ray Johnson was the only appellant. Secondly, we applied a preponderance of the evidence standard for proof under Title 15 citing Justice Cole’s concurrence in Spooner which adopted a preponderance of the evidence standard under Title 32. Finally, we held that the state carried its burden by a preponderance of the evidence.
We believe it necessary to recount the chronology and render a brief review of both appeals because of the nature of the Supreme Court order granting the writ. That order, rendered on a writ grant from the first appeal, our No. 19,618, ordered the remand of that case to this court “to consolidate the forfeiture proceedings of July 31, 1987 and December 2, 1987 and to reconsider the merits of defendant’s claims in light of all the evidence adduced at the hearings.” [emphasis supplied]
We must admit to some confusion as to the meaning of the Supreme Court writ grant order. The use of the singular “defendant” could mean either the criminal defendant, Tommy Ray Johnson; the seven accounts dealt with in the first appeal; or all nine accounts. The word “consolidate” could mean that we are to consider the evidence adduced at both forfeiture proceedings with respect to the claim of whoever/whatever we determine the instant “defendant” to be. It also could mean that we are to disregard the second appeal and to “start over” considering all of the defendants and all of the evidence.
We believe the common sense interpretation of the Supreme Court order is that we are to consider the evidence at both hearings to judge the appellants’ argument in the original appeal concerning the sufficiency of the evidence. We reach this interpretation because the second writ grant was pending before the Supreme Court at the time of the original order and it was not remanded to us in the writ order. Thus, since writs are pending with respect *1057 to the two accounts involved in the second appeal, No. 20,076, it seems logical that the Supreme Court did not intend that case to be affected by the order in question.[3]
Thus, we will consider the sufficiency of evidence as it relates to the state’s burden of proving drug racketeering activity arising from the forfeiture of seven savings accounts on July 31,1987 after a review of all of the evidence presented at the July 31, 1987 hearing[4] and the evidence presented at the December 2, 1987 hearing which forfeited the remaining two accounts.
The names appearing on the accounts which are the subject of this appeal on remand are as follows.
HOMER NATIONAL BANK (Claiborne Parish) Account # 1-00707934 Names: Glenda or Dorothy Johnson Address: Rt. 1, Box 150-B Homer, LA 71040 Suspected Balance: $10,127.51
MINDEN BANK & TRUST COMPANY (Webster Parish) Account #2166895 Names: Glenda or Thomas R. Johnson Address: Rt. 1, Box 150-B Homer, LA 71040 Suspected Balance: $8,790.33
HOMER NATIONAL BANK (Claiborne Parish) Account # 1-007084692 Names: Thomas R. or Dorothy Johnson Address: 1610 Cornell Street Ruston, LA 71270 Suspected Balance: $8,056.92
SECURITY FIRST NATIONAL BANK (Lincoln Parish) Account #00631647 Name: Dorothy Lee Johnson Address: 1610 Cornell Street Ruston, LA 71270 Suspected Balance: $ 439.00
PELICAN HOMESTEAD, Ruston Branch (Lincoln Parish) Account # 25-02001608 Names: Dorothy Lee Johnson or Thomas Ray Johnson Address: 1610 Cornell Street Ruston, LA 71270 Suspected Balance: $4,876.67
RUSTON BUILDING & LOAN ASSOCIATION (Lincoln Parish) Account # 1-30-000218-0 Names: Thomas R. Johnson or Dorothy R. Johnson Address: 1610 Cornell Street Ruston, LA 71270 Suspected balance: $3,236.26
LINCOLN BANK & TRUST COMPANY (Lincoln Parish) Account # 2-09-964-0 Names: Dorothy L. or Thomas R. Johnson Address: 1610 Cornell Street Ruston, LA 71270 Suspected balance: $9,625.20
*1058 In order to establish its burden of proof, the state must first establish that Tommy Ray Johnson was engaged in a pattern of drug racketeering as defined by LSA-R.S. 15:1352. Next the state must show that the money in the accounts was “used in the course of, intended for use in the course of, derived from, or realized through, conduct in violation of a provision of R.S. 15:1353.” In keeping with our pronouncement in the second appeal of this case, we adopt a preponderance of the evidence standard of proof for proceedings brought under LSA-R.S. 15:1356, et seq. State v. Nine (9) Savings Accounts, 535 So.2d 1097 (La.App. 2d Cir.1988).
The evidence presented at the July 31st hearing was the testimony of Jim Tuten, an investigator for the district attorney’s office and a member of Lincoln Parish Narcotics Task Force. Tuten revealed that Tommy Ray Johnson had been under investigation for about five years. Between January and June of 1987, agents monitored five controlled buys of marijuana from the defendant at his home in Rusten. After the fifth sale, a search warrant was obtained and executed, and inside defendant’s home officers found a quantity of marijuana, $15,597 in cash (some of it in marked bills from the controlled purchases), and numerous financial records. Among the evidence were books from defendant’s backyard mechanic shop, bank statements from nine different banks in north Louisiana, slips showing cash deposits to various accounts in amounts ranging from $500 to $2,000, and working copies of income tax statements and returns for the years 1984, 1985 and 1986.
The tax returns reflected that the defendant was unemployed, that his wife had an annual salary ranging from $12,000 to $15,-000, and that the only other income reported by the couple was interest from bank accounts. When showed a list of bank accounts, Tuten identified those as a list of accounts corresponding to the statements found in the defendant’s house.
Tuten also opined that certain handwritten entries in the “books” for defendant’s auto repair business corresponded closely with drug transactions because one particular individual’s name was listed five or six times. Tuten finally stated he learned that Claiborne Parish had some arrest warrants for Toylean Johnson, also known as Bones-tine Johnson, for distribution of cocaine. He testified, however, that he did not know anything further of the relationship between the defendant, Toylean or Glenda. He finally testified that the bank statements found in the home were dated December of 1986. Although six months old when they were seized, the statements were from the month before the instant investigation began.
The hearing of December 2 was considerably more extensive. We rioted the evidence adduced there at some length in our opinion in No. 20,076 and will not recount that evidence here. We will only note that the trial court found the testimony of Tommy Ray Johnson, Bonestine Johnson and Toylean Johnson to be incredible. We concluded there “that the state has carried its burden of proving by a preponderance of the evidence that the funds [in the two accounts at issue] were derived from drug racketeering.”
In summary, the evidence of the two hearings shows that Mr. Johnson had seven accounts at several different banks in a four-parish area. Another account was in the name of his wife alone, and the last account was in the name of his wife and one of his sisters. Additionally, the police obtained a large sum of money which included marked bills amounting to $15,597 in Mr. Johnson’s home. Mrs. Johnson testified that this cash sum and all family expenses came from her salary and the repair shop. This testimony was specifically determined to be incredible by the trial court. The trial court was not impressed with the “repair shop” and made detailed findings of the reasons why it was not. These credibility determinations are all supported by the record.
*1059 Simply stated, the evidence of the drug purchases, the finding of substantial cash intermixed with marked money from a recent drug purchase, as well as the incredible defense testimony is fatal to appellant’s position with respect to the five accounts listed in the name of the criminal defendant, Tommy Johnson. However, there are two other accounts in this appeal. One is the Homer National Bank account in the name of his sister, Glenda, and his wife, Dorothy, with a balance listed of $10,-127.51. The other is a Security First National Bank account in the name of Dorothy Lee Johnson with the balance listed as $439.00.
We observe that the funds in the latter account are relatively small, while the funds in the former account are relatively large. Glenda Johnson is a student at Grambling University and said she had received student loans and other income. She stated that she made all the deposits in this account and that none of the funds belonged to Dorothy Johnson. This testimony is highly suspicious when contrasted to the instant circumstances,' but on the record of the two hearings, we are of the view that the evidence is insufficient to support the trial court’s conclusion that the funds in the account in the name of Glenda or Dorothy Johnson and those in the small account in the name of Dorothy Lee Johnson were derived through drug transactions.
Accordingly, we will reverse the trial court judgment with respect to these two accounts and affirm it with respect to the other five. The judgment of the trial court is therefore reversed with respect to Homer National Bank account No. 1-00707934 in the name of Glenda or Dorothy Johnson and Security First National Bank account No. 00631647 in the name of Dorothy Lee Johnson. In all other respects, it is affirmed.
REVERSED IN PART AND AFFIRMED IN PART.

. As amended, appellants were all of the persons whose names were on those accounts except for Toylean and Bonestine Johnson because they had not been served.

. It should be noted that the instant seizure was brought under the Louisiana Drug Racketeering Act. LSA-R.S. 15:1351, et seq.

. Also, we presume the high court did not intend that we reexamine our constitutional ruling. Our holding in that respect was plain. If the court disagreed, presumably the writ would have been made peremptory in that regard, or the court would have taken the case up.

. The transcript of this hearing was, for some reason, filed in the second appeal, No. 20,076.