553 So.2d 823 (1989)
STATE of Louisiana
v.
NINE SAVINGS ACCOUNTS.
Nos. 88-K-2809, 89-K-0501 and 89-K-0679.
Supreme Court of Louisiana.
December 11, 1989.
Rehearing Denied January 18, 1990.
*824 Samuel H. Thomas, Tallulah, for Nine Sav. Accounts.
William J. Guste, Jr., Atty. Gen., Tommy Adkins, Dist. Atty., John Sheehan, and Daniel Grady, III, Asst. Dist. Attys., for the State.
LEMMON, Justice.
The determinative issue in this case is whether money in bank accounts, allegedly derived from drug racketeering activity, is subject to forfeiture under the provisions of the Louisiana Drug Racketeering Act, La.R.S. 15:1351 et seq., enacted by Acts 1983, No. 727.
After Thomas Johnson sold marijuana to undercover narcotics agents at Johnson's residence on five occasions during a five-month period, the police obtained a warrant to search the residence. The search yielded financial records, tax records and approximately $15,000 in cash, which included about $3,000 in marked bills used by the agents who made the drug purchases. Also seized in the search were the bank records for the nine savings accounts at issue in this case.
The district attorney subsequently filed a petition for forfeiture of the money in the nine savings accounts pursuant to La.R.S. 15:1351 et seq. In two separate judgments the trial judge ordered all nine of the accounts forfeited.[1] The court of appeal affirmed the forfeiture of the seven accounts which bore Johnson's name, but reversed the forfeitures of the accounts in the name of Johnson's wife and daughter. 535 So.2d 1097 and 540 So.2d 1055. The district attorney and the account owners applied for certiorari, and we granted all three applications. 540 So.2d 335, 541 So.2d 1386 and 542 So.2d 1.
The threshold question is whether the accounts, allegedly containing the proceeds of drug activity, were subject to forfeiture under the statute.
Section 1353 defines the activities prohibited by the Act as follows:
A. It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of drug racketeering activity to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use *825 thereof, in the acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise.

B. It is unlawful for any person, through a pattern of drug racketeering activity, knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property.
C. It is unlawful for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of drug racketeering activity.
D. It is unlawful for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of this Section. (emphasis added).
Section 1356 of the Act provides for civil forfeiture of certain property related to prohibited activities as follows:
A. All property, immovable or movable, including money, used in the course of, intended for use in the course of, derived from, or realized through, conduct in violation of a provision of R.S. 15:1353 is subject to civil forfeiture to the state. (emphasis added).
Section 1356 therefore authorizes forfeiture of money used in the course of conduct in violation of La.R.S. 15:1353. The critical issue here is whether the prosecutor proved such use.
Section 1353 by its terms prohibits a person, when he has knowingly received funds derived from drug racketeering activity as defined in La.R.S. 15:1352(A), only from using or investing the funds either (1) to acquire title to or an interest in immovable property or (2) to establish or operate any enterprise. Section 1353 does not purport to prohibit the mere receipt of funds from drug racketeering activity or to prohibit any other use or investment of such funds. This section is clearly intended as an anti-laundering statute to permit the pursuit of drug-related funds which have been invested in real estate or in business enterprises by persons who knew the source of the funds.
We therefore reject the district attorney's contention that the statute's making it unlawful "to use or invest ... any part of such proceeds ... in the acquisition of any title to, or any right, interest or equity in immovable property or in the establishment or operation of any enterprise" should be construed as prohibiting either (1) any use of such funds or (2) investment of such funds in real estate or business enterprises. Such an interpretation is gramatically inconsistent with the wording of the statute and is also inconsistent with the stated purpose of Act 727.[2]
Because Act 727 was apparently patterned after 18 U.S.C. § 1961 et seq. (the Racketeer Influenced and Corrupt Organizations Act), federal decisions in this area are persuasive. 18 U.S.C. § 1962(a) makes it unlawful for a person who has received income from racketeering activities "to use or invest, directly or indirectly, any part of such income ... in acquisition of any enterprise". In Hemmings v. Barian, 822 F.2d 688 (7th Cir.1987), the court held that for a violation of Section 1962 there must be, in addition to a pattern of racketeering activity, an investment in another enterprise of the funds received from the racketeering activity. In United States v. Cauble, 706 *826 F.2d 1322, 1331 (5th Cir.), cert. denied 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984), the court held that the government, in order to establish a Section 1962 violation, must prove the existence of an enterprise, the defendant's derivation of funds from a pattern of racketeering activity, and the use of any part of that income in acquiring an interest in or operating the enterprise. In United States v. Rone, 598 F.2d 564 (9th Cir.1979), cert. denied 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980), the court noted that the statute "seeks to bar the investment of racketeering moneys [and] the acquisition of property through a pattern of racketeering activity". Id. at 568. And in Guerrero v. Katzen, 571 F.Supp. 714 (D.C.D.1983), affd. 774 F.2d 506 (D.C.Cir.1985), the court held that "the gravamen of § 1962(a) is not the receipt of funds or benefits from a pattern of racketeering activity; rather, it is the investment of such funds to acquire an interest in, establish, or operate an enterprise". Id. at 721. The court further stated:
RICO does not forbid engaging in racketeering activity or even in a pattern of such activity. Section 1962(a) requires that a person receive income from a pattern of racketeering activity and that he use the income to establish, operate or acquire an interest in an interstate enterprise.
Id. at 718. (emphasis in original).
Therefore, the prosecutor in this case could not prove a violation of La.R.S. 15:1353 by merely showing Johnson had used proceeds of drug activity. It was necessary to prove use or investment in the acquisition of immovable property or in the establishment or operation of any enterprise. Because there is no suggestion of Johnson's investment in immovable property, the decision turns on whether a deposit in a savings account is use or investment in an enterprise.
La.R.S. 15:1352(B) defines enterprise as follows:
Enterprise means any individual, sole proprietorship, partnership, corporation or other legal entity, or any unchartered association, or group of individuals associated in fact and includes unlawful as well as lawful enterprises and governmental as well as other entities.
Under 18 U.S.C. § 1961(4), enterprise is similarly defined:
"[E]nterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.
In United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), the Court, in addressing what actually constitutes an enterprise under the RICO statute, stated:
The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.... [An enterprise] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.
In In re Cantanella, 583 F.Supp. 1388 (E.D.Penn.1984), it was alleged that the "enterprise" in which Cantanella, a securities broker, gained an interest was the securities accounts of Cantanella's customer. The court held that "[n]o conceivable reading of the statutory definition would support a conclusion that securities accounts qualify as `enterprises'". Id. at 1426.
An enterprise contemplated by Section 1353 A is an entity established for the purpose of engaging in a course of conduct. A deposit of funds, derived from drug activity, in a bank savings account is not an investment in the establishment or operation of an enterprise contemplated by Section 1353 A.
It is unnecessary in the present case to address the question whether the prosecutor proved the necessary connection between the drug activity and the money in the nine savings accounts.[3] Even if this *827 had been proved, there was no proof that part of the proceeds of drug racketeering activity was used or invested in the acquisition of an interest in immovable property or in the establishment or operation of any enterprise, and therefore no proof of a violation of Section 1353. Thus, the prosecutor failed to prove that the money in the accounts was subject to forfeiture as property "used in the course of, intended for use in the course of, derived from, or realized through conduct in violation of a provision of R.S. 15:1353". La.R.S. 15:1356. The savings accounts are not subject to seizure under Section 1356.
Accordingly, the judgments of the court of appeal are set aside insofar as they affirm the judgments of forfeiture. The judgments are otherwise affirmed.
NOTES
[1] The nine accounts, with balances ranging from $439 to over $10,000, were with different banks and bore different names. Johnson was co-owner of seven of the accounts, his wife owned one, and his wife and daughter co-owned the ninth.
[2] The purpose of La.R.S. 15:1351 et seq. is described in the title of the Act, which provides:

An Act to enact Chapter 11 of Title 15 of the Louisiana Revised Statutes of 1950, to be comprised of R.S. 15:1351 through R.S. 15:1356, relative to drug racketeering and related organizations, to define and prohibit drug racketeering activities, to prohibit the use or investment of proceeds knowingly received from a pattern of drug racketeering activity, or the proceeds derived from the use or investment of such proceeds, in the acquisition of immovable property or in the establishment or operation of an enterprise, to prohibit the acquisition or maintenance of an interest in or control of an enterprise or immovable property through a pattern of drug racketeering activity, to prohibit the conducting or participating in an enterprise through a pattern of drug racketeering activity by any person employed by or associated with an enterprise, to prohibit conspiring or attempting to violate such prohibitions, to provide for criminal penalties and civil remedies, and otherwise to provide with respect thereto.
[3] We granted certiorari primarily to address the question as to the burden of proof in this forfeiture proceeding of the connection between Johnson's proved drug activity and the funds deposited in the bank accounts. This burden of proof issue was left without decision by a majority of this court in the forfeiture proceeding under La.R.S. 32:1550 A(7)(c) in State v. Spooner, 520 So.2d 336 (La. 1988). The bank accounts in this case obviously do not qualify under the statute used in Spooner to forfeit money seized incident to a valid arrest and found in close proximity to controlled dangerous substances. Because we reverse the judgments of forfeiture on other grounds, we pretermit discussion of the burden of proof under La.R.S. 15:1356.