11 WOODARD, Judge.
A jury convicted Mr. Terry J. Touchet, the Defendant, of racketeering, in violation of La.R.S. 15:1353(C), and of conspiracy to commit racketeering, in violation of La. R.S. 15:1353(D). Mr. Touchet appeals, contending that the proof was insufficient to convict him of those charges. He also alleges other assignments of error. Based on the record before us, we reverse his conviction and order an acquittal of the two charges.
A group of individuals, including Mr. Touchet, transported marijuana from Texas and sold it in Louisiana, specifically, in the tri-parish area comprising Acadia, Vermilion, and Jefferson Davis Parishes. Mr. David Camacho supplied Mr. Monty Williams in Texas. Mr. Williams, in turn, supplied Louisianian, Mr. William “Billy” Walton, Jr. Mr. Williams and Mr. Walters usually met in Calcasieu Parish to confect their transactions. Mr. Walton supplied Mr. Touchet, a resident of Vermilion Parish. Mr. Touchet then supplied other individuals for “street-level” distribution, consumed some of the marijuana, and gave some of it away.
On September 26, 1996, the State charged Mr. Touchet and three co-defendants with drug racketeering, a violation of La.R.S. 15:1353. The bill of information alleged that Mr. Touchet and the others had engaged in a pattern of criminal drug activity from January 1, 1994 until June 17,1996.
On October 26, 1998, the State filed an amended bill, changing the named defendants. This bill charged only Mr. Touchet and a single co-defendant, Mr. Camacho, who was not named in the first bill. On November 5, 1998, the trial court heard and denied Mr. Touchet’s motion to sever his trial from Mr. Camacho’s.
On November 10, 1998, the lower court heard Mr. Touchet’s motion to quash. The State again amended the bill, dropping two of four counts and amending the last one. At this point, the bill charged both men with racketeering, a violation of La.R.S. 15:1353(C), and conspiracy to commit racketeering, a violation of La.R.S. 15:1353(D).
Jury selection proceeded from November 17-20, 1998. On November 20, 1998, Mr. Camacho pled guilty and received a probated sentence. On that same date, oral argument began in Mr. Touchet’s case. Trial ended on November 24, 1998. The jury found Mr. Touchet guilty as charged.
IgOn February 1, 1999, the trial court sentenced him to fifty years at hard labor on each charge, to run concurrently, and denied his motion to reconsider sentence on February 8,1999.
Mr. Touchet appeals his conviction and sentence. He complains of insufficient evidence to convict, excessive sentence, and that the court erred when it denied his motions: (1) to sever him from co-defendant, Mr. Camacho; (2) to prevent Mr. Camacho from testifying against him; and (3) for a mistrial.
LAW
ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent. We find no errors patent.
*196 SUFFICIENCY OF THE EVIDENCE
Mr. Touchet alleges the evidence adduced at trial was insufficient to support his convictions under La.R.S. 15:1353(0 and (D). It is well-settled that the State must prove the elements of the charged crime beyond a reasonable doubt.[1]
The State charged Mr. Touchet and tried him pursuant to La.R.S. 15:1353(0 and (D):
C. It is unlawful for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.
D. It is unlawful for any person to conspire or attempt to violate any of the provisions of Subsections A, B, or C of this Section.
La.R.S. 15:1352(B) defines “enterprise”:
“Enterprise” means any individual, sole proprietorship, partnership, corporation or other legal entity, or any un-chartered association, or group of individuals associated in fact and includes 1 sunlawful as well as lawful enterprises and governmental as well as other entities.
Mr. Touchet argues that the State failed to prove that an “enterprise” existed, within the statute’s meaning. In presenting its case, the State relied heavily on the testimony of Mr. Walton, the “mule” who transported the Texas marijuana from Cal-casieu Parish to Mr. Touchet in Vermilion Parish. Mr. Walton testified that he and Mr. Touchet became acquainted in 1994 when they were next-door neighbors. They became friends when Mr. Touchet gave him a goat and they began smoking marijuana together. Over time, they started obtaining the substance from cheaper sources. Upon finding less expensive marijuana in Texas, Mr. Walton began getting it there, picking up $1,000.00-$3,000.00 worth at a time. At some point, he and Mr. Touchet began selling the substance in Vermilion, Acadia, and Jefferson Davis Parishes. The pair sold some of the marijuana and smoked some themselves. Eventually, Mr. Walton found yet another, cheaper, supplier in Texas, Mr. Williams. Mr. Walton made approximately one pickup per month for a year-and-a-half.
At trial, Mr. Walton testified that he would obtain money from Mr. Touchet or his girlfriend, then he would obtain the marijuana from Mr. Williams. Normally, he met Mr. Williams in Calcasieu Parish near the Texas border, although he had made pickups in Texas. The activity ceased when the police arrested Mr. Walton in Jefferson Davis Parish with twenty pounds of marijuana in his truck.
An informant and Mr. Touchet’s uncle, Mr. Shelby Roy Fontenot, supported Mr. Walton’s testimony. In the spring of 1996, Mr. Touchet approached his uncle about taking over Mr. Walton’s role as the “mule.” Mr. Fontenot reported the matter to authorities, who began using him as a confidential informant. He accompanied Mr. Walton twice, making the pickup in Calcasieu Parish and unloading in Jefferson Davis Parish. After the first trip, Mr. Touchet showed Mr. Fontenot some marijuana (apparently at Mr. Touchet’s residence in Vermilion) and identified it as part of the load that Mr. Fontenot and Mr. Walton brought back. Mr. Walton paid Mr. Fontenot $150.00 for making the trips, and Mr. Touchet paid Mr. Fontenot $180.00 and two red heifers. Mr. Walton’s arrest, and the subsequent investigation of Mr. Touchet, resulted from Mr. Fontenot’s information and police surveillance.
Mr. Williams and his wife, Melissa, gave testimony that generally corroborated the pattern of activity which Mr. Walton and Mr. Fontenot revealed. Also, they noted I ¿that Mr. Williams received marijuana in *197 Texas from Mr. Camacho. Sometimes, Mr. Willliams would “shop around” and obtain marijuana from other suppliers. According to their testimony, Mr. Touchet did not know either of the Williamses. Mr. Walton supported this assertion.
Other witnesses testified that Mr. Tou-chet sold or gave them marijuana in Vermilion, Acadia, and Jefferson Davis Parishes. The State also introduced telephone records to show communications between the various parties. These records showed contact between Mr. Willliams and Mr. Camacho, as well as between Mr. Walton and Mr. Willliams, and between Mr. Walton and Mr. Touchet.
There is little Louisiana jurisprudence regarding this statute, but the State cites federal cases, noting that Louisiana racketeering laws are modeled upon federal “RICO” legislation.[2] Because of the parallel between the RICO and Louisiana’s statutes, federal decisions in this area are persuasive.[3]
Mr. Touchet cites the federal jurisprudence, specifically those cases outlining the elements of racketeering. These cases show that proof of the existence of an “enterprise” is essential. Also, the “pattern of racketeering activity” must be proven as a separate element. In United States v. Turkette,[4] the Supreme Court explained:
The enterprise is an entity ... a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. § 84 U.S.C.1961(1) (1976 ed. Supp. 1111). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by participants in the enterprise.... The “enterprise” is not the “pattern of racketeering activity”; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.
I ¡¿Federal jurisprudence has followed Turkette closely, requiring that the “enterprise” at issue have a purpose separate from the criminal activity at issue. In Terrell v. Hancock Bank,[5] the plaintiff alleged the defendant bank and its holding company engaged in a pattern of racketeering activity by mail and wire fraud. The court, relying on Turkette, held that the plaintiff failed to show that the bank and the holding company were associated apart from bank activities. Since the mailings and wire communications at issue were themselves bank activities, the enterprise and the pattern of activity were not separate and distinct, as required by Turk-ette.
Similar reasoning arose in Crowe v. Henry,[6] where the federal court noted that an enterprise must be either a legal entity or an association-in-fact. Further, an association-in-fact enterprise must: (1) have an existence separate and apart from the pattern of racketeering, (2) be an ongoing organization, and (3) have members functioning as a continuing unit as shown by a decision-making structure. The court held *198 that the plaintiff had shown the existence of an enterprise separate and apart from the racketeering activity at issue. The enterprise was a farming venture that produced and sold crops, as well as bought farming equipment. Operations lasted nearly four years and were run by partners, who met regularly to make management decisions. Meanwhile, the racketeering activity consisted of mail and wire fraud, financial institution fraud, and theft of goods in interstate commerce.[7]
Explaining the application of Turkette, the same federal circuit noted that a RICO “enterprise” must have an ongoing organization or be a continuing unit, such that the enterprise has an existence that can be defined apart from the commission of the predicate acts.[8] In the present case, the lower court instructed the jury on the separate nature of these elements. The State acknowledged these requirements in its closing argument:
In analyzing the evidence that I have presented to you in this case, I’m going to try to demonstrate to you what the State feels the evidence |fihas shown. That racketeering does, in fact, exist in this case, and that Terry Touchet was involved in that racketeering activity.
I’m going to do it by asking you or posing to you three (3) questions. And remember this is on the issue of whether or not the State has proven the charge of racketeering, a charge separate and apart from the charge of conspiracy to commit racketeering.
Question No. 1: What does the State have to prove to obtain a racketeering conviction in this case? The State has to prove two (2) separate things. The first thing we have to prove is the enterprise. The second thing we have to prove is the pattern of racketeering activity. “Two (2) separate things.”
Now, Question No. 2: What were the enterprise and pattern of racketeering in this ease as shown to you by the evidence? The enterprise in this case was under the definition of the things that can comprise an enterprise. It was a group of individuals who were associated in fact.
And stated in another way, according to the purpose was to supply and transport marijuana from Texas for distribution in a three (3) parish area in Louisiana. That was the enterprise and that’s what they were doing. That was their common purpose.
The testimony and the phone evidence you have seen in this case will support that there was a group of individuals, and that’s what they were engaged in doing. This was their common binding material. This was their business. This was their illegal business.
The pattern of racketeering activity in this case, according to the testimony you heard, are the actual acts of distribution and/or possession of marijuana with intent to distribute that occurred in these three (3) parishes. So you’ve got the racketeering, the pattern of racketeering activity, the actual acts of distribution of marijuana or possession with intent of marijuana in three (3) Louisiana parishes: Jefferson Davis Parish, Vermilion Parish, and Acadia Parish.
The next question: Who was the enterprise and what was the pattern of racketeering activity? In this case, as shown to you by the evidence, the enterprise were these group of individuals: David Camacho, Monty Williams, Billy Walton, and Terry Touchet.
How were they associated in fact? They were associated in fact because they had a common purpose. The common purpose was to obtain quantities of marijuana in Texas, transport it into Louisiana for purposes of breaking it down and further distribution which con *199 stitutes the racketeering activity and the pattern of racketeering activity.
What was the pattern of racketeering activity in this case? And remember, the pattern of racketeering activity is two (2) or more similar l7acts of distribution and/or possession of marijuana with intent to distribute. Recall the testimony and evidence you heard in this case. What were the acts of distribution that you heard about in the three (3) parish area in Louisiana: Vermilion, Jeff Davis, and Acadia Parish?
Thus, the State presented the “enterprise” as the group of co-defendants organized to transport marijuana. The separate “racketeering activity” consisted of Mr. Touchet’s acts of selling the marijuana. Essentially, they were the same activity. However, the evidence did not show that the co-defendants’ association, or alleged “enterprise,” was an independent entity with members functioning as a continuing unit with a decision making structure.
Analyzing the evidence in light of Turk-ette and its progeny, the State failed to prove that Mr. Touchet was involved in an ongoing criminal enterprise which existed separate and apart from the pattern of activity at issue. In the case sub judice, the evidence which showed he was engaged in an enterprise was exactly the same evidence that showed he was involved in a pattern of illegal activity. The group or chain of alleged racketeers involved in this case can only be viewed as associates in the context of the drug-running activity at issue. Apart from that activity, no unit, group, association, racket, or enterprise, was shown—or even suggested—-to exist. Applying the federal RICO jurisprudence to this case, this element was not proven beyond a reasonable doubt.
t However, it is well-settled that this court may continue its analysis to determine whether the trial evidence supported a conviction for a lesser-incluSed offense. During the jury charge, the lower court instructed the jury that “attempted racketeering” was available as a responsive verdict. Attempt is defined by La.R.S. 14:27, as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
|SC. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
Therefore, the question is whether the State proved, beyond a reasonable doubt, that Mr. Touchet specifically intended to conduct or participate in an enterprise through a pattern of racketeering activity. Specific intent is defined by La. R.S. 14:10(1):
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
Under the evidence adduced, it is highly questionable whether Mr. Touchet actively desired to conduct or participate in a rack *200 et or criminal enterprise within the racketeering statute’s meaning. Referring to the earlier discussion, such a racket or enterprise would have to exist independently of the activity at hand, with an ongoing command or management structure. Again, there is little or no evidence that Mr. Touchet intended such a result.
Certainly, the State showed that Mr. Camacho, Mr. Willliams, Mr. Walton, and Mr. Touchet formed a chain or loose association that moved marijuana from Texas into Louisiana, but this loose association of individuals was not shown to have any organization or to have had any planning ability or management structure. The evidence reveals that Mr. Touchet, Mr. Walton, and Mr. Willliams were opportunists, who bought marijuana where it was cheapest. Additionally, the State did not prove that Mr. Touchet had any intent to create, help create, or participate in an ongoing enterprise, independent of the drug transportation which involved he and Mr. Walton. The State also failed to prove that Mr. Touchet committed or omitted to an act that tended to set-up or organize a drug racket/enterprise.
Our analysis of attempt may seem coun-terintuitive in light of the evidence that Mr. Touchet colluded in a marijuana-transportation scheme, that he was caught with a large amount of marijuana and distribution-related paraphernalia in his home, and that he sold marijuana. However, while it appears that Mr. Touchet is factually guilty 13of some drug-related crimes, the State chose not to charge him with them and, the evidence adduced was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged — either racketeering or attempted racketeering. Essentially, the State charged the Defendant with the wrong crime, as federal RICO jurisprudence clearly requires proof that the enterprise exists as an independent entity. Such proof was not adduced in the case sub judice.
As for the conspiracy charge, it also fails, both for the reasons previously discussed and because “conspiracy” itself was not proved. Conspiracy is defined by La.R.S. 14:26:
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
As one of our sister circuits explained in State v. Lowery:[9]
It is essential to a conspiracy that there be a joining of the minds to accomplish a concerted action which has an unlawful purpose. Criminal intent to commit a specific offense must exist in at least two minds. The fact that this defendant apparently obtained this marijuana from someone else who knew, because of the nature of the business of distributing marijuana, that the defendant was likely to transfer it to one or more other persons unknown to the person from whom the defendant obtained the marijuana is all that can be determined from the instant evidence. This is not a combination of minds to accomplish a concerted unlawful purpose sufficient to establish the offense of conspiracy to distribute marijuana.
In other words, the fact that the person from whom the defendant obtained the marijuana may have presumed that the defendant intended to distribute it to others does not amount to á conspiracy *201 to distribute marijuana between the two. There must be sufficient evidence that the defendant’s supplier specifically intended for the defendant to do certain |1fland specific acts with the marijuana as part of a joint enterprise. The instant evidence does not rise to this level.
(Citations omitted).
In this case, the State’s evidence showed that Mr. Touchet and Mr. Walton did “join minds” to accomplish a concerted, unlawful purpose; however, that purpose had nothing to do with setting up or conducting a separate, ongoing racket or enterprise. In short, the trial evidence revealed that Mr. Touchet acting, with Mr. Walton, brought marijuana into Louisiana, where Mr. Tou-chet sold it. But, the evidence failed to prove beyond a reasonable doubt that Mr. Touchet was a racketeer or that he attempted, conspired, or even intended to be a racketeer.
We are mindful that jurors found him guilty as charged on both counts, but our analysis is not based upon a reassessment or re-weighing of the facts. Rather the State’s evidence fails as a matter of law. Turkette, which the Louisiana Supreme Court has applied,[10] and its progeny plainly require us to hold the evidence insufficient. For the reasons discussed, Mr. Touchet’s convictions and sentences are reversed, and acquittals are ordered entered in the record. This result preter-mits discussion of the remaining assignments of error.
CONVICTION AND SENTENCE REVERSED; ACQUITTAL ORDERED.

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).

. Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961, et seq.

. State v. Nine Sav. Accounts, 553 So.2d 823 (La.1989); see also Burnham Broad. Co. v. Williams, 629 So.2d 1335 (La.App. 4 Cir.1993), writ denied, 632 So.2d 770 (La.1994), cert. denied, 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 25 (1994).

. 452 U.S. 576, 583, 101 S.Ct. 2524, 2528-29, 69 L.Ed.2d 246 (1981).

. 7 F.Supp.2d 812 (S.D.Miss.1998).

. 43 F.3d 198 (5th Cir.1995).

. Id.

. Montesano v. Seafirst Commercial Corp., 818 F.2d 423 (5th Cir.1987).

. 609 So.2d 1125, 1130 (La.App. 2 Cir.1992), writ denied, 617 So.2d 905 (La.1993).

. Nine Sav. Accounts, 553 So.2d at 826.